# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-0858** (Fayette County 14-F-233)

**Christopher L. Palmer,**
**Defendant Below, Petitioner**

**FILED**

**September 6, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Christopher L. Palmer, by counsel John M. Thompson, appeals the Circuit Court of Fayette County's August 5, 2015, order that sentenced him to not less than one year nor more than five years of incarceration and assessed a five hundred dollar fine for his conviction of conspiracy to commit a felony, and to not less than two years nor more than fifteen years of incarceration for burglary. The State, by counsel Shannon Frederick Kiser, filed a response. On appeal, petitioner argues that the circuit court erred in (1) denying his Rule 29 motion for an acquittal, (2) failing to exclude a photographic lineup, and (3) failing to properly charge the jury.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2014, the victim, Betty Puckett, identified petitioner and his co-defendant through a photographic lineup as the perpetrators of a break-in at her home. As a result, petitioner was charged with one count of conspiracy and one count of burglary.

In October of 2014, petitioner moved the circuit court to exclude the photographic lineup on the ground that it was not properly conducted. Petitioner argued that the photographic lineup procedure failed to record a complete description of the perpetrator by the eyewitness and in the eyewitness's own words, as required by West Virginia Code § 62-1E-2(a).[1] Petitioner also

---

[1]West Virginia Code § 62-1E-2(a) provides that

[p]rior to a lineup or showup, law enforcement should record as complete a description as possible of the perpetrator provided by the eyewitness, in the eyewitness's own words. This statement should also include information regarding the conditions under which the eyewitness observed the perpetrator including location, time, distance, obstructions, lighting and weather conditions.

1

argued that the officer who conducted the photographic lineup failed to record the names of every person in said lineup, as required by West Virginia Code § 62-1E-2(k)(2).[2]

In November of 2014, the circuit court held a motions hearing. A West Virginia State Police sergeant testified that the photographic lineup was performed in conjunction with an ongoing investigation of petitioner and his co-defendant. Petitioner called The West Virginia State Police corporal responsible for performing the lineup. The corporal described the process by which the photographs were compiled and testified that the lineup was performed at approximately 10:30 p.m., with Ms. Puckett sitting in the police cruiser. The officer further testified that all necessary forms were completed before Ms. Puckett identified petitioner. He testified that he did not provide a description of the perpetrator and affirmed that he gave Ms. Puckett no other instructions beyond directing her to look through the photographs to potentially identify the perpetrator. The officer then asked Ms. Puckett if she could identify the perpetrator from any of the photographs, although he admitted that he did not record the names of the individuals used in the lineup.

On cross-examination, respondent produced the form used by the officer to prove that Ms. Puckett answered all the remaining portions on the form regarding her eyewitness account of the crime. The officer further testified that Ms. Puckett identified petitioner without hesitation. Petitioner renewed his argument that the officer failed to conduct the lineup properly and that it should be excluded pursuant to West Virginia Code §§ 62-1E-2(a) and 62-1E-2(k)(2). After a review of all the exhibits, the circuit court found that all five males depicted in the lineup were similar-looking, with no distinguishing features. Next, the circuit court found that Ms. Puckett provided a description of the individual that she saw in her home during the burglary and she was able to observe the individual for a substantial amount of time. Finally, the circuit court found that the procedure was not unduly suggestive, considering the relative ease with which the victim identified petitioner. The circuit ruled that that the photographic lineup was admissible and entered an order denying petitioner's motion to exclude the photographic lineup.

---

The eyewitness should also be asked if he or she wears or has been prescribed glasses or contact lenses and whether he or she was wearing them at the time of the witnessed event. The administrator should record whether or not the eyewitness was wearing glasses or contact lenses at the time of the lineup or showup.

[2] West Virginia Code § 62-1E-2(k)(2) provides that

Law-enforcement officers should make a written or video record of a lineup which shall be provided to the prosecuting attorney in the event that any person is charged with the offense under investigation. The written record shall include all steps taken to comply with this article which shall include the following information: (2) The names of every person in the lineup, if known, and all other persons present at the lineup[.]

Later in November of 2014, petitioner's trial commenced. Ms. Puckett testified that, on the night of the incident, she was home alone when she saw the co-defendant's car stop at the end of her driveway. She testified that petitioner exited the car, walked around the back of her home, knocked twice, and then pried her backdoor open. She further testified that she confronted petitioner and was approximately six feet from him when she told him to leave her home. Ms. Puckett identified petitioner as the man who broke into her home, testified that tools were used to pry her back door open, and identified the co-defendant's car as the one that pulled into her driveway. A police officer testified that a criminal investigation of the incident at Ms. Puckett's home led police to petitioner and his co-defendant after the two men were identified using the license number on the co-defendant's car. Another police officer testified that he collected a flathead screwdriver and a pry bar from the co-defendant's vehicle and the damaged portions of Ms. Puckett's door frame for evidence. Other witnesses testified that petitioner and the co-defendant were together the day before the crime. Petitioner and the co-defendant admitted to being in the vehicle. After respondent rested its case-in-chief, petitioner moved for a judgment of acquittal, arguing that respondent failed to prove the necessary elements of the crimes charged. The circuit court recounted the evidence introduced by respondent and held that sufficient evidence existed to warrant the denial of petitioner's motion.

Petitioner then testified in his own defense and stated that he was not the individual that entered Ms. Puckett's home. Petitioner denied that the co-defendant was a "close friend" but admitted to riding along with him on the day of the crime. Thereafter, petitioner rested his case. Upon reviewing the instructions and conferring with both parties, the circuit court determined that attempted burglary should not be included in the instructions. No objections were made regarding the charge to the jury. Following deliberations, the jury found petitioner guilty of both charges. The circuit court entered its final sentencing order on August 5, 2015, and sentenced petitioner to not less than one year nor more than five years of incarceration and assessed a five hundred dollar fine for conspiracy to commit a felony, and sentenced to not less than two years nor more than fifteen years of incarceration for burglary. The circuit court enhanced the burglary sentence due to petitioner's prior felony conviction. The circuit court ordered that the sentences be served consecutively to each other and consecutively to an unrelated Summers County, West Virginia sentence. It is from the sentencing order that petitioner appeals.

We have previously set forth the following standard of review:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). Upon our review, we find no error in the circuit court's rulings below.

We begin by addressing petitioner's argument that there was insufficient evidence to support his conviction. Petitioner contends that the circuit court erred in denying his motion for

an acquittal pursuant to Rule 29 of the West Virginia Rules of Criminal Procedure because respondent failed to prove the necessary elements of the crimes charged or that he was involved in a conspiracy with the co-defendant.[3] Upon our review, we find no error in the circuit court's denial of petitioner's Rule 29 motion for an acquittal.

When discussing a motion for an acquittal, we have previously held that

> [t]he trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). We have also held that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). It is clear from the record that the evidence before the jury was sufficient for it to find petitioner guilty on all charges.

To sustain his conviction for conspiracy under West Virginia Code § 61-10-31, the State was required to prove that "two or more persons [conspired] . . . to commit any offense against the state" [and] "one or more of such persons does any act to effect the object of the conspiracy." To sustain his conviction for burglary under West Virginia Code § 61-3-11(a), the State was required to prove that petitioner "in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein." At trial, Ms. Puckett identified petitioner as the man who broke into her home, testified that tools were used to pry her back door open, and further testified that the co-defendant's car was the one that pulled into her driveway on the night of the incident. She also described the manner in which petitioner used

---

[3]Rule 29 of the West Virginia Rules of Criminal Procedure provides, in part,

"[t]he court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses . . . ."

tools to forcibly enter her home. Ms. Puckett further testified that she confronted petitioner in her home and was approximately six feet from him when she told him to leave. As outlined above, there was sufficient evidence for the jury to find, as it did, that petitioner committed the crimes charged. As such, we find no error in this regard.

Next, petitioner argues that that the circuit court failed to exclude the photographic lineup because the officer failed to conduct the lineup consistently with West Virginia Code §§ 62-1E-2(a) and 62-1E-2(k)(2). Petitioner contends that the photographic lineup, wherein Ms. Puckett identified petitioner, should have been inadmissible because the officer failed to make a record. However, we disagree.

West Virginia Code § 62-1E-2(a) requires that

[p]rior to a lineup or showup, law enforcement should record as complete a description as possible of the perpetrator provided by the eyewitness, in the eyewitness's own words. This statement should also include information regarding the conditions under which the eyewitness observed the perpetrator including location, time, distance, obstructions, lighting and weather conditions. The eyewitness should also be asked if he or she wears or has been prescribed glasses or contact lenses and whether he or she was wearing them at the time of the witnessed event. The administrator should record whether or not the eyewitness was wearing glasses or contact lenses at the time of the lineup or showup.

After fulfilling the requirements of West Virginia Code § 62-1E-2(a), "[l]aw-enforcement officers should make a written or video record of a lineup which shall be provided to the prosecuting attorney in the event that any person is charged with the offense under investigation." West Virginia Code § 62-1E-2(k)(2). Here, the police officer conducted two photographic lineups, the first involving petitioner's co-defendant and the second involving petitioner. During the first lineup, Ms. Puckett could not identify the co-defendant as the driver of the car in her driveway. However, regarding the second lineup, Ms. Puckett was able to provide the officer with a description of the physical attributes of the person who actually pried open her back door and entered her home. Based upon that description, the officer put together a photo array of five similar-looking individuals for the second lineup and Ms. Puckett quickly identified petitioner. The circuit court reviewed the requirements set forth in West Virginia Code § 62-1E-2(a) and found that the officer was able to fulfill the statutory requirements even though he did not record the names of all the individuals depicted in the photographs, especially in light of the submission of the lineup itself, all the photographs used, and the relative ease with which the victim identified petitioner. Next, the circuit court found that the procedure was not unduly suggestive because Ms. Puckett provided a description of the individual that she saw in her home during the burglary and was able to observe the individual for a substantial amount of time. Therefore, we find no error in the circuit court's ruling that the photographic lineup was admissible.

Finally, petitioner argues that the circuit court failed to properly charge the jury. In support, petitioner essentially argues that his trial counsel failed to object to the jury charge,

which failed to use the term "feloniously" in the essential elements of burglary as it was read to the jury. We find no error.

We have previously held that "in West Virginia criminal cases[,] the sole bases for attacking an unobjected to jury charge are plain error and/or ineffective assistance of counsel." *State v. White*, 231 W.Va. 270, 280, 744 S.E.2d 668, 678 (2013) (citing *State v. Miller*, 194 W.Va. 3, 17, 459 S.E.2d 114, 128 (1995)). We have also previously established that

> [u]nder the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right-the failure to make timely assertion of the right-does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain."

Syl. Pt. 8, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

As we previously established in *White*, the defendant in that case, after reviewing the charge to the jury, approved of the charge as it was read and assured the trial court that he was satisfied with the contents of the charge and had no objection to it. 231 W.Va. 270, 280, 744 S.E.2d 668, 678 (2013). The same is true in the present case. It is clear from the record that petitioner initially requested that the circuit court require respondent to prove that he entered Ms. Puckett's home with the intent to commit a felony therein as a part of the burglary charge. However, upon reviewing the language of West Virginia Code § 61-3-11(a), the parties recognized and agreed that the statute required only that respondent prove that petitioner entered Ms. Puckett's home with the intent to commit a crime therein.[4] Therefore, the petitioner knowingly and intelligently waived any right to have the jury instructed in the manner he proposes in his appeal. Accordingly, the plain error doctrine does not apply and we find no error in the charge to the jury.

For the foregoing reasons, the circuit court's August 5, 2015, sentencing order is hereby affirmed.

Affirmed.

---

[4]West Virginia Code § 61-3-11(a) reads

> [b]urglary shall be a felony and any person convicted thereof shall be confined in the penitentiary not less than one nor more than fifteen years. If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary.

**ISSUED**: September 6, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II